OPINION OF THE COURT
Daniel F. Luciano, J.
This is an action commenced by the plaintiff, Maria Martell, *981 seeking to recover for emotional injuries allegedly sustained as a consequence of being erroneously informed by the defendant physicians, Lea Tala and Jerome Weinraub, that she was suffering from cancer, upon examination of X rays taken of the plaintiff’s, Maria Martell, back at the emergency room of the defendant, St. Charles Hospital, on July 28,1982.
There are several applications currently before the court.
The defendant, Lea Tala, has moved "for an Order pursuant to CPLR 3211 (a) (7), dismissing the plaintiff’s Complaint for failure to state a cause of action or in the alternative, an Order striking the plaintiff’s Note of Issue for the reason that discovery in this action is not complete”. The defendant, Jerome Weinraub, has cross-moved for "[a]n Order dismissing the plaintiff’s Complaint pursuant to CPLR Section 3211 (a) (7) for failure to state a cause of action, or in the alternative, directing plaintiff to submit a medical affidavit substantiating the proximate cause between her alleged mental anguish and the treatment provided by the defendants in this action”. The defendant, St. Charles Hospital, has moved for an order: "(1) Pursuant to CPLR 3212 granting defendant st. charles hospital summary judgment dismissing plaintiff’s complaint for failure to state a cause of action, or in the alternative, (2) Limiting the plaintiff’s damages to the two days between the original diagnosis by Dr. Tala and the second diagnosis by the plaintiff’s personal physician, that being the time that the plaintiff was uninformed [sic] as to her true medical condition.”
The plaintiff, Maria Martell, has responded with three cross motions seeking costs upon the three said cross motions and for the motion and two cross motions of the respective defendants, Lea Tala, Jerome Weinraub and St. Charles Hospital, on the ground that those applications by the said defendants are "spurious and frivolous”.
(Another motion by the defendant, Jerome Weinraub, seeking to strike the plaintiff’s, Maria Martell, note of issue and other relief is considered in a separate order and opinion.)
Initially it is observed that the motion by the defendant, Lea Tala, and the cross motion by the defendant, Jerome Weinraub, to dismiss for failure to state a cause of action pursuant to CPLR 3211 (a) (7), made after joinder of issue, shall be deemed a motion and cross motion for summary judgment. (Kotick v Desai, 123 AD2d 744; Impastato v De Girolamo, 95 AD2d 845; 4 Weinstein-Korn-Miller, NY Civ Prac U 3211.02; see, Rich v Lefkovits, 56 NY2d 276.)
*982 The motion and the cross motion of the defendant doctors, Lea Tala and Jerome Weinraub, raise the issue of whether the claimed emotional injuries are compensable under the circumstances alleged herein.
In Kennedy v McKesson Co. (58 NY2d 500), the Court of Appeals categorized three types of cases relating to this issue. "The first recognizes that when there is a duty owed by defendant to plaintiff, breach of that duty resulting directly in emotional harm is compensable even though no physical injury occurred.” (Supra, 58 NY2d, at 504.) The second category involves those cases in which a plaintiff seeks recovery for emotional injuries for shock and fear incurred as a consequence of physical injuries sustained by a third person, although the plaintiff himself or herself was not in the "zone of danger”. In this category of cases the plaintiff is not entitled to recover damages. "The third branch of the emotional injury decisions involves the violation of a duty to plaintiff which results in physical injury to a third person but only financial or emotional harm or both to the plaintiff.” (Supra, 58 NY2d, at 505.) In these cases recovery for emotional injury is not allowed.
In summarizing its review of these cases the court said, "[t]he rule to be distilled from those cases is that there is no duty to protect from emotional injury a bystander to whom there is otherwise owed no duty, and, even as to a participant to whom a duty is owed, such injury is compensable only when a direct, rather than a consequential, result of the breach.” (Supra, 58 NY2d, at 506.)
Thus, the Court of Appeals left undisturbed the ruling in Battalla v State of New York (10 NY2d 237) which permitted a recovery for emotional injuries. In that case the infant plaintiff was placed in a ski chair lift by an employee of the defendant, State of New York, who failed to secure and properly lock the belt intended to protect the occupant. As a result the infant plaintiff became frightened and hysterical upon the descent suffering " 'severe emotional and neurological disturbances with residual physical manifestations’ ” (supra, 10 NY2d, at 239).
The defendant doctors, Lea Tala and Jerome Weinraub, contend, however, that the circumstances alleged herein do not support the plaintiff’s, Maria Martell, right to recover for her claimed emotional injuries. In support of this position they cite Green v Leibowitz (118 AD2d 756, 757) in which the *983 court rejected a claim of negligent infliction of emotional distress stating the following: "We also reject the plaintiffs contention that recovery may be had for the negligent infliction of emotional distress whenever a direct duty to the plaintiff is owed and a breach of that duty results in emotional injury. While the plaintiff is correct in stating that in New York, physical injury is nú longer a necessary element of a cause of action to recover damages for negligent infliction of emotional distress (see, e.g., Kennedy v McKesson Co., 58 NY2d 500, 504), nevertheless, we have never recognized a cause of action as broad as that asserted by the plaintiff, which would indeed encompass the ordinary case of legal malpractice. While physical injury is no longer a necessary element, the cause of action must, nevertheless, be premised upon a breach of duty which 'unreasonably endanger[s] the plaintiffs physical safety’ (Bovsun v Sanperi, 61 NY2d 219, 229; see also, Kennedy v McKesson Co., supra [while the plaintiff was allowed to seek recovery of pecuniary losses, recovery for emotion disturbance was denied as he had not been exposed to risk of bodily harm by the negligence of the defendant]; Becker v Schwartz, 46 NY2d 401 [the plaintiffs were not exposed to bodily harm, but were allowed to seek recovery for pecuniary losses sustained in consequence of the defendant’s breach of due care owed to them in that regard]; Battalla v State of New York, 10 NY2d 237 [damages are recoverable for psychic injury caused by fear for one’s own physical safety]).”
In this court’s view the Appellate Division, Second Department, in Green v Leibowitz (supra) has added a requirement of an additional element of cause of action to recover damages for emotional injuries not intended to be included by the Court of Appeals. In Kennedy v McKesson Co. (58 NY2d 500, supra), the first category of cases, in which recovery for emotional injuries was permitted, was that in which there was a breach of a duty owed by a defendant to a plaintiff resulting directly in emotional harm. The Court of Appeals did not require that the breach of duty constitute the unreasonable placement of the plaintiff in physical danger. This may be concluded from the Court of Appeals citation of Johnson v State of New York (37 NY2d 378) and Lando v State of New York (39 NY2d 803). The Appellate Division, Second Department, in Green v Leibowitz (supra, at 757-758) in dealing with these cases seemed merely to conclude that they represent another class of cases in which there may be recovery for emotional injury by stating "[n]or does the plaintiffs claim *984 come within the recognized exception to the foregoing which permits recovery for emotional harm to a close relative resulting from the negligent failure to deliver a corpse, or the negligent delivery of a false message of death”, citing Johnson v State of New York (supra) and Lando v State of New York (supra). Certainly, in its recent opinion in Martinez v Long Is. Jewish Hillside Med. Center (70 NY2d 697) the Court of Appeals gave no indication that it had added the element identified in Green v Leibowitz (supra) as an element of the cause of action.
The rule of law set forth in Green v Leibowitz (supra), which might appear to mandate dismissal of the complaint in the instant action, has no application to the facts herein. What distinguishes Green v Leibowitz (supra) from the case at bar, in this court’s view, is the foreseeability of the asserted wrongful act resulting in emotional injury.
In this regard it should be noted here that in tort law the term "foreseeability” has two distinct applications. In one instance it is used in the analysis of the question of whether a defendant has actually breached a duty to a plaintiff; that is whether "the defendant, exercising the foresight of an ordinarily prudent person in the circumstances presented by the case at hand, violated a duty one so positioned owed to the plaintiff. That is, did the defendant act with due care in the circumstances revealed by the evidence?” (Sewar v Gagliardi Bros. Serv., 51 NY2d 752, 758 [Fuchsberg, J., concurring].)
In its alternative application foreseeability is an issue to be resolved in the question of causation. Thus, if the consequences of an act, though caused in some degree by that act, can be said to be so highly extraordinary, so remote or so unlikely the actor is held not to be liable in the eyes of the law for the reason that the result was not a "foreseeable” result of the act. (See, Derdiarian v Felix Contr. Corp., 51 NY2d 308, rearg denied 52 NY2d 784; Ventricelli v Kinney Rent A Car Sys., 45 NY2d 950, remittitur amended 46 NY2d 770; Restatement [Second] of Torts § 435 [2], comments c, d, e.) Or, stated in the words of then Associate Judge Benjamin N. Cardozo, "[t]he wrongdoer may be charged with those consequences and those only within the range of prudent foresight * * * It is not enough that what happens is in the course of nature. It must be in the probable course of nature”. (Bird v St. Paul Fire & Mar. Ins. Co., 224 NY 47, 53-54.)
Applying a foreseeability test, rather than an exposure to *985 physical harm test in Green v Leibowitz (118 AD2d 756, supra), would not alter the result. Certainly it seems not to strain logic to conclude that emotional injury is not a foreseeable consequence of legal malpractice. While anger and frustration are emotions one might be expected to feel when wronged by one’s own attorney, resultant compensable emotional injury is not to be expected "in the probable course of nature.”
Analyzing the cases in which recovery for emotional injury has been in issue in terms of foreseeability leads to a rule which is more flexible, and in this court’s opinion, more appropriate than the blanket conclusion that the party claiming emotional injury must have been subject to physical harm in order to be compensated for the emotional injuries sustained.
Indeed, in Bovsun v Sanperi (61 NY2d 219, supra) cited by the Appellate Division, Second Department, in Green v Leibowitz (supra), the element of the cause of action that the plaintiff himself or herself must have been exposed to physical injury, in order to recover for emotional injury, was said to be a necessary element in only the type of case then under review. Such a case is one in which the emotional injury suffered results from observing, or being made contemporaneously aware of, a physical injury to a member of the plaintiff’s family. It was not said to be an element in every case in which a plaintiff seeks to recover for emotional injury.
Another case which may be profitably analyzed in terms of foreseeability is Ford v Village Imports (92 AD2d 717, lv denied 59 NY2d 604). In that case the plaintiff sought to recover for emotional injuries suffered as a consequence of faulty repairs to her automobile claiming that when the automobile ceased operating on State Route 490 she suffered " 'great embarrassment, humiliation, inconvenience and mental agony’ ” (supra, 92 AD2d, at 717). The court concluded that no cause of action had been stated finding that "[essential to this cause of action for negligent infliction of mental distress is proof of a traumatic event that caused the plaintiff to fear for her own safety” (supra, 92 AD2d, at 718). This again is an instance in which it appears that the Appellate Division (in this case the Fourth Department) has added an element not stated by the Court of Appeals to be an element of a cause of action for negligent infliction of directly incurred emotional injuries as a consequence of a breach of duty owing directly to the plaintiff.
*986 This court again finds itself in agreement with the conclusion reached by the Appellate Division but would urge that sound legal reasoning would mandate dismissal of such a cause of action on the ground that compensable emotional injury is not a foreseeable consequence of negligent repair of an automobile which causes it to cease operating. For, as observed in the factually similar case of Fusco v General Motors Corp. (126 Misc 2d 998, 1003):
"However distressing it may be to be riding in an automobile which malfunctions suddenly and severely, it is the opinion of this court that these facts do not lead to the intuitive recognition that emotional harm will ensue.
"As anyone who drives will attest, automobiles break down all the time, due to faulty manufacturing or otherwise. It is not uncommon even for an automobile to come to a sudden stop, startling those who may be riding in it. As unfortunate and annoying as these occurrences may be they are dealt with on a regular basis without any resulting mental injury.
"Simply put, these are not 'unordinary’ situations in which emotional harm can be expected. They lack the necessary 'comprehensible link’ between injury and the tortious act. This is not to say that there may not be circumstances in which the malfunction of an automobile may result in compensable mental harm, without accompanying physical symptoms.”
What the court was saying in Fusco v General Motors Corp. (supra), in this court’s view, was simply that emotional injury in that case was not a foreseeable consequence of the alleged wrongdoing. And, it is the rationale set forth in Fusco v General Motors Corp. (supra) which explains why a claim for emotional injuries in such a case should be denied without the need to add an element to a cause of action which was not identified by the Court of Appeals in Kennedy v McKesson Co. (58 NY2d 500, supra).
In the case at bar there are no allegations that the defendants’, St. Charles Hospital, Lea Tala and Jerome Weinraub, alleged wrongdoing endangered the plaintiff’s, Maria Martell, physical safety. Nevertheless, in viewing the question in terms of foreseeability, the court concludes that the complaint states a cause of action.
The plaintiff, Maria Martell, had prior to the incident involved herein been a victim of cancer and had had a mastectomy. Certainly for any person to be informed by his or *987 her physician that such person has cancer is a shock. To a patient who has previously had the disease such shock may be amplified. Of course, not every person so informed will react in a similar fashion. But, in this court’s view, it cannot be concluded that significant emotional upset is an unforeseeable consequence of receiving such information. Nor is it unforeseeable that in some patients such emotional upset may rise to the level of emotional injury. Indeed, in Ferrara v Galluchio (5 NY2d 16) the Court of Appeals recognized that the fear of cancer may lead to compensable emotional injury.
A physician offering a diagnosis of a patient’s medical condition is, to the patient, a credible source, whose opinions are worthy of belief. Thus, viewing the instant issue as one of foreseeability it easily may be concluded that if a physician misinforms a patient that such patient has cancer, such misinformation may lead to emotional injury. If such misinformation is erroneously communicated to the patient through negligence a cognizable cause of action exists.
Nor does the Court of Appeals memorandum decision in Winik v Jewish Hosp. of Brooklyn (31 NY2d 936) warrant a different conclusion. In that case, after trial, the Court of Appeals observed: "Appellant was unable to demonstrate that her fear of contracting cancer was reasonable or attributable to respondent surgeon’s alleged negligence” (supra, 31 NY2d, at 937). That posttrial finding does not support the conclusion that the plaintiff herein, Maria Martell, has not stated a cause of action.
Accordingly, notwithstanding the broad language of the Appellate Division, Second Department, in Green v Leibowitz (118 AD2d 756, supra), which the defendants, Lea Tala and Jerome Weinraub, seek to apply to a state of facts not then under consideration by the Appellate Division, Second Department, the court concludes that the plaintiff, Maria Martell, has stated a cause of action and that summary judgment dismissing the complaint is not appropriate. The extent to which the plaintiff, Maria Martell, has actually suffered an emotional injury caused by the alleged wrongdoing is not a question which can be resolved upon this pretrial motion.
The alternative relief requested by the defendant, Lea Tala, is for an order striking the note of issue on the ground that the plaintiff, Maria Martell, has not provided all requested authorizations. In her responding cross motion the plaintiff, Maria Martell, indicates that of the authorizations not pro *988 vided several were for records of physicians whose names the plaintiff did not know, that others had been previously served and that others were not provided pursuant to an agreement among the parties. The only unprovided authorization is that of Dr. Rubin and that is claimed to have been the result of an oversight which has now been remedied.
The submitted papers contain no rebuttal to the plaintiff’s, Maria Kartell, assertion in her cross motion and, therefore, the motion to strike the note of issue is denied on this ground. (But see the court’s order in the motion by the defendant, Jerome Weinraub, to strike the note of issue and for related relief.) If there is a further dispute with respect to authorizations any party may seek a conference before the undersigned, for the purpose of resolving the dispute, by means of a letter addressed to chambers.
The alternative relief requested by the defendant, Jerome Weinraub, is an order directing the plaintiff, Maria Kartell, "to submit a medical affidavit substantiating the proximate cause between her alleged mental anguish and the treatment provided by the defendants in this action”. In support of this request it is argued "that the plaintiff, a woman with a history of psychiatric problems predating the treatment by the defendants, should at a minimum be required to submit a medical affidavit substantiating the proximate cause between her alleged mental anguish and the treatment provided by the defendants in this action.”
As the defendant, Jerome Weinraub, however, has failed to inform the court of the authority pursuant to which such an order might be issued the request is denied. It is noted that this action was commenced prior to July 8, 1986, the effective date of CPLR 3012-a which sets forth the requirements concerning a certificate of merit in medical malpractice actions.
The other defendant herein, St. Charles Hospital, has moved for summary judgment dismissing the complaint. The argument in support of the motion, however, is brief. In part it is asserted "[t]hat the circumstances of this action do not involve negligent treatment allegedly giving rise to a potentially cancerous condition; or negligently permitting a cancer to develop unchecked. Therefore, there is no cause of action for negligent infliction of emotional distress resulting in cancer phobia.” This conclusionary argument is answered by the court’s findings above.
In its memorandum of law the defendant, St. Charles Hospi *989 tal, has argued that it is not liable for any wrongdoing on the part of the defendant physicians, Lea Tala and Jerome Weinraub. It is asserted in the memorandum of law that "the individually named defendant physicians are independent contractors and not the employees of the defendant, st. CHARLES HOSPITAL.”
It appears the defendants, Lea Tala and Jerome Weinraub, treated the plaintiff, Maria Martell, in the St. Charles Hospital emergency room. It further appears that the St. Charles Hospital emergency room was operated by Cooper Emergency Services of New York, P. C., at the time of the alleged misdiagnosis and imparting thereof to the plaintiff, Maria Martell. Nevertheless, the defendant St. Charles Hospital has not established a right to summary judgment on this ground.
In Mduba v Benedictine Hosp. (52 AD2d 450, 453-454) the Appellate Division, Third Department, considered the issue of a hospital’s liability for malpractice performed in its emergency room when the emergency room is independently operated:
"Assuming, arguendo, that Dr. British [sic] was an independent contractor, we reach the conclusion that the hospital would nevertheless be responsible for his negligence. This is not a situation where the decedent engaged Dr. Bitash in defendant’s hospital. The decedent entered the hospital for hospital treatment. The defendant hospital undertook to treat decedent for a charge and furnished the doctors and staff to render that treatment. Defendant having undertaken to treat decedent, which included both the necessary treatment and the furnishing of blood and other medicine needed in that treatment, was under a duty to do so effectively. Patients entering the hospital through the emergency room, could properly assume that the treating doctors and staff of the hospital were acting on behalf of the hospital. Such patients are not bound by secret limitations as are contained in a private contract between the hospital and the doctor. Defendant held itself out to the public offering and rendering hospital services (see, Hannon v Siegel-Cooper Co., 167 NY 244; Santise v Martins, Inc., 258 App Div 633, 664-665).
"The Court of Appeals has held that a defendant who employs an independent contractor to perform services that the defendant has undertaken to perform, is liable for the negligence of the independent contractor. (Miles v R & M Appliance Sales, 26 NY2d 451.) In so holding, the court *990 adopted the applicable rule from the Restatement of Torts, which provides: 'One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants’ (Restatement, Torts 2d, § 429). The rule is applicable if 'the negligence of the contractor consists * * * in carelessness in the detail of rendering them’ (Restatement, Torts 2d, § 429, Comment b).
"It is, therefore, our conclusion that the defendant hospital, having held itself out to the public as an institution furnishing doctors, staff and facilities for emergency treatment, was under a duty to perform those services and is liable for the negligent performance of those services by the doctors and staff it hired and furnished to decedent. Certainly, the person who avails himself of hospital facilities has a right to expect satisfactory treatment from any personnel who are furnished by the hospital. This does not mean that a hospital will be liable under principles of respondeat superior for the acts or omissions performed on its premises by any and every physician or other medical attendant.”
Mduba v Benedictine Hosp. (supra) has been cited with apparent approval by the Appellate Division of this Judicial Department (e.g., Mertsaris v 73rd Corp., 105 AD2d 67) and by the Court of Appeals (Hill v St. Clare’s Hosp., 67 NY2d 72) and this court is certainly bound to follow such controlling authority. (1 Carmody-Wait 2d, NY Prac §§ 2:58, 2:63.) Moreover, this court is in full accord with the conclusion reached by the Appellate Division, Third Department, in Mduba (supra).
Nevertheless, the court finds reason to examine the rationale which underlies the opinion in Mduba (supra). To demonstrate the court’s concern a brief historical review is in order.
In Schloendorff v Society of N. Y. Hosp. (211 NY 125), then Associate Judge Benjamin N. Cardozo, in writing for the Court of Appeals, applied the "professional skill” theory of immunity for hospitals. In this case Judge Cardozo reasoned, in part, "the true ground for the defendant’s exemption from liability is that the relation between a hospital and its physicians is not that of master and servant. The hospital does not undertake to act through them, but merely to procure them to *991 act upon their own responsibility.” (Supra, 211 NY, at 130.) This remained the rule in New York until the Court of Appeals decided the case of Bing v Thunig (2 NY2d 656) in which the court rejected the Schloendorff rule and found that the principles of respondeat superior should be applied to render a hospital liable for the malfeasance of the physicians and nurses which it employs. The Court of Appeals said, inter alia: "The rule of nonliability is out of tune with the life about us, at variance with modern-day needs and with concepts of justice and fair dealing. It should be discarded.” (Supra, 2 NY2d, at 667.)
Thus, as clearly as policy considerations dictated the result reached by Judge Cardozo in the Schloendorff opinion (supra) the court’s changing perception of society’s needs led to the demise of Schloendorff in New York and the birth of a new rule in Bing v Thunig (supra). Indeed this area of discussion, that is, the question of hospital liability for acts of physicians, is shrouded in public policy considerations, as exemplified by section 50-d of the General Municipal Law. This provision makes municipal corporations liable for acts of physicians and other medical care providers in public institutions. At one time the section served as an exception to the rule of Schloendorff v Society of N. Y. Hosp. (supra). (See, Schmid v Werner, 277 App Div 520 affd 303 NY 754, rearg denied 304 NY 643.)
It seems to this court, therefore, that the question of whether a hospital shall be held liable for the acts of physicians treating patients in the hospital’s emergency room is just as clearly a public policy question. The question merely involves an application of the policy enunciated in Bing v Thunig (supra). The issue of hospital liability is simply taken one step farther when the question is whether the hospital may be held for the acts of physicians in the hospital’s emergency room when the physicians are independent contractors rather than employees.
Several States have considered the issue and the near unanimous rule is that independent contractor status of a particular treating physician is not a bar to the hospital’s liability for malpractice. (Schagrin v Wilmington Med. Center, 304 A2d 61 [Del Super Ct 1973]; Irving v Doctors Hosp., 415 So 2d 55 [Fla App 1982], review denied 422 So 2d 842; Stewart v Midani, 525 F Supp 843 [ND Ga 1981]; Paintsville Hosp. Co. v Rose, 683 SW2d 255 [Sup Ct, Ky 1985]; Mehlman v Powell, 281 Md 269, 378 A2d 1121 [1977]; Grewe v Mt. Clemens Gen. Hosp., 404 Mich 240, 273 NW2d 429 [1978]; Hardy v Brantley, 471 So *992 2d 358 [Sup Ct, Miss 1985]; Arthur v St. Peters Hosp., 169 NJ Super 575, 405 A2d 443 [1979]; Hannola v City of Lakewood, 68 Ohio App 2d 61, 426 NE2d 1187 [1980]; Smith v St. Francis Hosp., 676 P2d 279 [Okla Ct App 1983]; Themins v Emanuel Lutheran Charity Bd., 54 Ore App 901, 637 P2d 155 [1981], review denied 292 Ore 568, 644 P2d 1129; Capan v Divine Providence Hosp., 287 Pa Super 364, 430 A2d 647 [1980]; Edmonds v Chamberlain Mem. Hosp., 629 SW2d 28 [Tenn Ct App 1981]; Brownsville Med. Center v Gracia, 704 SW2d 68 [Tex Ct App 1985]; Walker v Winchester Mem. Hosp., 585 F Supp 1328 [WD Va 1984]; Adamski v Tacoma Gen. Hosp., 20 Wash App 98, 579 P2d 970 [1978]; but see, Johnson v St. Bernard Hosp., 79 Ill App 3d 709, 399 NE2d 198 [1979]; Reynolds v Swigert, 102 NM 504, 697 P2d 504 [1984]; Tolman v IHC Hosps., 637 F Supp 682 [D Utah 1984] [independent radiologists maintaining offices in and operating out of hospital].)
In reaching this conclusion several of the courts have cited section 429 of the Restatement (Second) of Torts, as did the Appellate Division, Third Department, in Mduba v Benedictine Hosp. (52 AD2d 450, supra). Others cite section 267 of the Restatement (Second) of Agency. Still others cite both Restatements. The Agency Restatement provision states: "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.” The discussions in the cases predominantly focus on principles of "ostensible agency”, with or without citations to the Restatements.
In the cited case of Stewart v Midani (supra), the United States District Court for the Northern District of Georgia reviewed the decisions of cases from other jurisdictions including Arthur v St. Peters Hosp. (supra), Mehlman v Powell (supra) and Mduba v Benedictine Hosp. (supra). The common theme discussed in these cases, as well as others, is that when patients seek medical treatment at a hospital’s emergency room they are unaware of the contractual relationship between the hospital and the physicians who provide medical services in the emergency room. The patients in this situation have looked to the hospital as the provider of medical services, the hospital has given the appearance that it is the provider *993 of the medical services and the patient has reasonably relied on that appearance.
Summarizing its review of the cases the United States District Court in Stewart v Midani (525 F Supp 843, 853, supra) said: "The implications of this decision are not necessarily far-reaching. A hospital would not be held liable for the negligence of a doctor (whether on staff or not) if the patient was aware of the actual relationship between the doctor and the hospital. As the court in Arthur suggested, a simple notice might suffice to inform the prospective patient that the emergency room (or x-ray laboratory) is under the control of an independent contractor.”
It is this conclusion, apparently fully consistent with the decision of the Appellate Division, Third Department, in Mduba v Benedictine Hosp. (supra), which this court finds questionable.
This court finds itself more in accord with the discussion in the Ohio case of Hannola v City of Lakewood (supra). There the court reviewed, inter alia, an opinion of the Ohio Supreme Court in Rubbo v Hughes Provision Co. (138 Ohio St 178, 34 NE2d 202). That case considered the principles of agency by estoppel.
Considering the issue of hospital liability for malpractice by physicians in the hospital emergency room, the court in Hannola v City of Lakewood (68 Ohio App 2d 61, 65, 426 NE2d 1187, 1190, supra) indicated how there could be liability in accordance with principles of agency by estoppel. The court, however, went further and stated:
"The agency by estoppel created by the institution purporting to be a hospital is somewhat different than the narrow definition provided by Rubbo, supra. In that case, public advertisements disclaiming agency might have insulated the unwilling principals. The people who relied on the ostensible agency might have acted differently with knowledge that there was no actual agency. Here, we are faced with the situation of injured or ill patients in need of emergency medical treatment. Realistically, a person has no meaningful choice under the circumstances. He needs treatment and will turn to his local hospital to provide it regardless of prior notice that the physicians are independent contractors. The patient thinks of 'Lakewood Hospital’ in his time of need, not the West Shore Medical Care Foundation [the independent contractor].
*994 "Further, sound public policy demands that the full-service hospital not be permitted to contractually insulate itself from liability for acts of medical malpractice committed in its emergency room. First, the emergency room is an integrally related part of the full-service hospital. The hospital may not pretend that this essential element of its public service treatment facilities is a separate entity. Moreover, the nature of the situation when people turn to the hospital and its emergency room facilities for treatment is one fraught with crisis. People are often highly emotional. There is frequently no time to choose. Indeed, time is of the essence. The chances of going elsewhere for treatment are remote. Given the relationship of the emergency room to the full-service hospital and the crisis circumstances under which people seek emergency treatment, public policy requires that the hospital not be able to artificially screen itself from liability for malpractice in the emergency room.”
This court agrees.
The weakness of the reasoning which relies upon the application principles of ostensible agency may be highlighted by consideration of the fact that one who has read this opinion, by so doing, may have established a defense for a hospital which operates its emergency room through independent contractors. This conclusion is warranted since a review of the cases cited herein reflects that it is not at all uncommon in modern day hospitals to have emergency rooms operated by independent contractors. Any individual who has read those cases must be aware that if he or she enters a hospital emergency room, there is a reasonable probability that the physician who treats him or her is not a hospital employee. Reliance upon the outward appearance that the emergency room physicians are hospital employees might well not be reasonable on the part of any such individual. Thus, the application of the traditional rules of ostensible agency or agency by estoppel as to those individuals would serve as a defense to the hospital’s liability.
This court is of the further opinion that even with the knowledge that emergency room physicians were independent contractors, and not hospital employees, an individual requiring emergency room medical care, given a choice, would opt for the emergency room of the hospital which that individual perceived to have the better reputation. It is the hospital’s location and reputation which draw patients to its emergency room, as well as the exigencies of the moment, and, in this *995 regard, the contractual relationship between the hospital and the emergency room physicians is irrelevant as a practical matter.
A strict reading of Mduba v Benedictine Hosp. (52 AD2d 450, supra) and the majority of the cases of the other jurisdictions which have considered the issue suggest that hospitals are liable for emergency room malpractice of physicians who are technically independent contractors only because traditional principles of the law of agency and the law of torts are applicable. Those cases bring to mind a resurrection of the common-law Writs suggesting, as they do, that the hospital shall be held liable only if the facts fit neatly into the established parameters of the rules.
The folly of such reasoning, however, is that, as illustrated above, in this area of the law, the rules of law have been fit to meet the perceived needs of society. Indeed, they have been rules of public policy clothed in the shroud of the rules of law. In this court’s opinion it is public policy, and not traditional rules of the law of agency or the law of torts, which should underlie the decision to hold hospitals liable for malpractice which occurs in their emergency rooms. In this regard the observation of former United States Supreme Court Justice Oliver Wendell Holmes is apt: "The true grounds of decision are considerations of policy and of social advantage, and it is vain to suppose that solutions can be attained merely by logic and the general propositions of law which nobody disputes. Propositions as to public policy rarely are unanimously accepted, and still more rarely, if ever, are capable of unanswerable proof.” (Shriver, Judicial Opinions of Oliver Wendell Holmes, at 65.)
Accordingly, this court respectfully suggests that the law of New York should be that hospitals are liable for the malpractice of physicians in hospital emergency rooms irrespective of private contractual relationships between the physicians and the hospitals and without regard for whether the patient has reason not to rely upon the appearance that the physician is a hospital employee.
In any event, the cross motion by the defendant, St. Charles Hospital, for summary judgment dismissing the complaint is denied.
The alternative relief requested by this cross motion of the defendant, St. Charles Hospital, is to limit the damages suffered to the two-day period between the dissemination of the *996 erroneous information and the time the plaintiff, Maria Mar-tell, was informed of her true condition. The court must reject this contention, however, for if the defendants’, St. Charles Hospital, Lea Tala and Jerome Weinraub, alleged wrongdoing is, as a matter of fact, responsible for emotional injury suffered by the plaintiff, Maria Martell, the recovery for such injury should not be artificially limited simply because in the opinion of the defendant, St. Charles Hospital, the plaintiff’s suffering should have ended at a particular moment or upon the happening of a particular event. If the defendants, St. Charles Hospital, Lea Tala and Jerome Weinraub, are responsible for the injury the damages are not to be limited merely because this particular plaintiff was susceptible to greater damage than might be another individual. (See, 7A, Part 1, Warren’s Negligence, ch 7, § 2.)
The request for costs by the plaintiff, Maria Martell, in the three responsive cross motions is denied.