525 S.E.2d 268

Marianne OSBORNE, individually, and as Guardian ad Litem for Matthew Connor Osborne, a minor, Appellant,

v.

R. Stephen ADAMS, M.D., B. Edward O'Dell, M.D., Adams, O'Dell, Davidson and Lusk, OB/GYN, P.C., Evelyn H. Melnick, M.D., J.E. Harlan, Jr., M.D., Pee Dee Neonatal Associates, P.A., and McLeod Regional Medical Center, Respondents.

No. 3088.

Court of Appeals of South Carolina.

Heard Oct. 5, 1999.

Decided Dec. 13, 1999.

Rehearing Denied Jan. 29, 2000.

Edward L. Graham, of Zeigler & Graham, of Florence, for appellant.

John S. Wilkerson, III, of Turner, Padget, Graham & Lacey, of Florence, for respondent McLeod Regional Medical Center; Charles E. Carpenter, Jr. and S. Elizabeth Brosnan, both of Richardson, Plowden, Carpenter & Robinson, of Columbia, for respondents Evelyn H. Melnick, M.D., J.E. Harlan, Jr., M.D., and Pee Dee Neonatal Associates, P.A.; and William L. Pope, of Pope & Rogers, of Columbia, for respondents R. Stephen Adams, B. Edward O'Dell, and Adams, O'Dell, Davidson and Lusk, OB/GYN, P.C.

PER CURIAM:

Marianne Osborne (Osborne) brought this medical negligence action for damages her son allegedly sustained at the time of his birth at McLeod Regional Medical Center (McLeod). The trial court granted summary judgment in favor of McLeod, finding Osborne failed to establish a genuine issue of material fact as to McLeod's negligence. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Marianne Osborne selected respondents Dr. B. Edward O'Dell and his colleagues at Adams, O'Dell, Davidson & Lusk,

OB/GYN, P.C. to provide obstetrical care in 1992. Osborne alleges she chose McLeod Regional Medical Center as the hospital where she would give birth and obtain incidental medical services, including newborn care, because as a pharmacist employed by McLeod she was given financial incentives for using McLeod facilities and services. Osborne also stated she had confidence in McLeod's delivery and neonatal services from her employee "indoctrination" and McLeod's marketing campaign, touting its facilities and listing Dr. J.E. Harlan, Jr. (Dr. Harlan) as its neonatal intensive care unit's (NICU) medical director.

On May 21, 1993, after five days in McLeod under the care of her obstetricians, Osborne gave birth to Connor, nine weeks premature. As a result of his prematurity, Connor developed respiratory distress and received treatment from Dr. Evelyn H. Melnick and Dr. Harlan, both of Pee Dee Neonatal Associates, P.A. at McLeod's NICU. Osborne alleges Connor developed severe problems including cerebral palsy and mental retardation as a result of mismanagement of his respiratory distress. Osborne stated she was not aware of the neonatologists' status as independent contractors either at the time she chose McLeod as the place to deliver her child or during the delivery.

Osborne sued all of the Respondents in May 1996 alleging Connor's injuries were directly and proximately caused by the negligence and wrongful conduct of the Respondents. McLeod denied any negligence and moved for summary judgment in May 1997.

The trial court granted McLeod's motion for summary judgment, finding Osborne "failed to present any expert testimony whatsoever ... which creates an issue of fact as to any negligence on the part of [McLeod]." The court noted it had allowed Osborne an additional forty-five days to present affidavits and other evidence in opposition to the motion, but the materials submitted by Osborne "do not relate to the allegations in the Complaint and are insufficient to create a question of fact" as to McLeod's negligence. Osborne appeals the granting of summary judgment to McLeod.

## ISSUES

I. Did the trial court err in granting summary judgment to McLeod because McLeod has a nondelegable duty to provide competent and proper medical care to newborns in its neonatal unit?

II. Did the trial court err in granting summary judgment where Osborne accepted services from the neonatologists at McLeod, reasonably believing they were agents or employees of McLeod, and where Osborne's son allegedly sustained damages as a result of the neonatologists' negligence, under Restatement (Second) of Torts § 429 (1965)?

III. Did the trial court err in granting summary judgment where discovery is not complete and further inquiry into the facts is needed to determine the application of the law concerning McLeod's respondeat superior liability for its nurse/technician employees?

## STANDARD OF REVIEW

A trial court may properly grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) SCRCP. *See also Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997).

In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Summer v. Carpenter,* 328 S.C. 36, 492 S.E.2d 55 (1997); *City of Columbia v. American Civil Liberties Union,* 323 S.C. 384, 475 S.E.2d 747 (1996).

## ANALYSIS

### I. NONDELEGABLE DUTY

■ Osborne argues McLeod had an absolute, or nondelegable, duty to care for its NICU patients; therefore, the hospital is liable for the torts of its neonatologists even though

they are independent contractors, not McLeod employees. We disagree.

Traditionally, an employer is not liable for the acts of its independent contractors. This absence of liability arises because the employer has no control over the acts and work of an independent contractor. Restatement (Second) of Torts § 409 cmt. b (1965). *Cf. South Carolina Ins. Co. v. James C. Greene & Co.,* 290 S.C. 171, 348 S.E.2d 617 (Ct.App.1986) (under the doctrine of respondeat superior in tort law, the employer is responsible for the acts of an employee acting within the scope of employment).

An exception to the rule that an employer is not liable for the torts of an independent contractor occurs where the employer is found to have a nondelegable duty to perform an act, in which case, the employer is liable for the actions of the independent contractor. *See Durkin v. Hansen,* 313 S.C. 343, 437 S.E.2d 550 (Ct.App.1993). Under the nondelegable duty doctrine, the employer is free to delegate the *duty* to the independent contractor; however, the employer cannot delegate the *liability.* Nondelegable duty is similar to strict liability in the sense that the employer need not have been at fault or committed any negligence; the independent contractor's negligence is imputed to the employer. *Foltz v. Northwestern Bell Tel. Co.,* 221 Neb. 201, 376 N.W.2d 301, 309 (1985).

In *Simmons v. Tuomey Regional Medical Center,* 330 S.C. 115, 498 S.E.2d 408 (Ct.App.1998), *cert. granted* (April 8, 1999), this Court held a hospital's duty to its emergency room patients to provide competent medical care has evolved into a nondelegable duty. Thus, hospitals are liable for the negligence of its emergency room physicians, even if they are designated as independent contractors. In so holding, we stated, "Consideration of the effect of public policy in the medical care arena leads us to this conclusion." *Id.* at 118, 498 S.E.2d at 409.

The linchpin for our finding a nondelegable duty in emergency room situations is the nature of emergency room operations and the public perception of the unity of hospitals and their emergency rooms. State regulations require all hospitals to maintain an emergency room twenty-four hours a day.

24A S.C.Code Ann.Regs. 61–16 § 613 (1992). We also recognized the dynamics of emergency room treatment, particularly the fact that one cannot choose to pass by the nearest emergency room following a sudden injury or illness, as well as the fact that the operation of an emergency room is a vital service for the community. *Simmons*, 330 S.C. at 120, 498 S.E.2d at 410.

Osborne contends we should extend the holding in *Simmons* beyond emergency room physicians, applying it to other independent contractor physicians, in this case to the neonatologists at McLeod. Osborne argues this Court should find McLeod had a nondelegable duty to operate the NICU and it is therefore liable for the torts of the independent contractor neonatologists, regardless of any fault or negligence on McLeod's part.

In support of her argument, Osborne asserts the doctors from Pee Dee Neonatal Associates, P.A. are the only neonatologists practicing at McLeod, and Dr. Harlan was advertised as being the medical director of McLeod's NICU. Osborne points out state accreditation regulations require all hospitals seeking designation as a Level III perinatal unit to staff the unit twenty-four hours a day, seven days a week. Because McLeod holds itself out as a Level III hospital, she contends competent and proper neonatal care of preterm newborns is integral to a Level III perinatal unit.

Osborne argues a patient is no more likely to "choose" a neonatologist for intensive care treatment of premature infants than to "choose" an emergency room. She maintains she did not choose the neonatologists who treated Connor. Rather, she chose McLeod and its NICU, in part, because of the articles by McLeod touting its NICU facilities.

Osborne called her regular obstetrician, who directed her to McLeod. Her physicians treated her for five days in the hospital, until she gave birth and the neonatologists began treating Connor. Osborne did not present herself or her son at the emergency room for treatment and neither she nor her son received treatment from an emergency room physician. Rather, she was admitted to the hospital at the direction of and under the care of her obstetrician.

All hospitals are required to have emergency rooms, but all hospitals do not have to have Level III perinatal units. 24A S.C.Code Ann.Regs. 61–16 § 607 (1982 & Supp.1998). We do not agree with Osborne's contention that a NICU is equivalent to a "baby" emergency room. A NICU is an intensive care and recovery unit not unlike units that provide intensive care to adults following emergency treatment or surgery. Although NICU patients may be recovering from serious conditions, a NICU is not a true "emergency room".

We decline to extend our holding in *Simmons* beyond treatment provided by emergency room physicians. Although we recognize the importance of newborn care, the same public policy reasons that compelled our decision in *Simmons* are not present in this case. Our adoption of a nondelegable duty in *Simmons* was limited to the unique circumstances of emergency room treatment. We believe our decision is in line with other jurisdictions that have adopted a nondelegable duty in emergency room situations, but have declined to extend it beyond emergency room physicians. *See, Jackson v. Power*, 743 P.2d 1376 (Alaska 1987); *Valdez v. Pasadena Healthcare Management, Inc.*, 975 S.W.2d 43 (Tex.App.1998).

## II. RESTATEMENT (SECOND) OF TORTS § 429

■ Osborne next argues if this Court declines to extend a nondelegable duty to neonatologists, McLeod's liability for treatment provided by the neonatologists should be predicated on Restatement (Second) of Torts § 429 (1965). We disagree.

Under Restatement (Second) of Torts § 429, liability is based upon the plaintiff's "reasonable belief" that the services in question would be performed by the defendant or the defendant's servant. The commentary to § 429 notes that this section is similar to Restatement (Second) of Agency § 267 (1958). This type of agency is sometimes referred to by courts and commentators as "ostensible agency". However, the basis of liability under Torts § 429 is unlike § 267 in that the provisions of § 429 do not require a representation or "holding out" by the employer or detrimental reliance. Section 429 of the Restatement (Second) of Torts has not been adopted in South Carolina.

South Carolina courts have instead relied upon the three-part test of Restatement (Second) of Agency § 267 (1958), requiring that a plaintiff establish an apparent agency relationship as a basis for asserting liability against a principal. As between a physician and a hospital, the plaintiff must show (1) that the purported principal consciously or impliedly represented another to be his agent; (2) that there was a reliance upon the representation; and (3) that there was a change in position to the relying party's detriment. *Shuler v. Tuomey Regional Medical Center,* 313 S.C. 225, 437 S.E.2d 128 (Ct. App.1993); *Strickland v. Madden,* 323 S.C. 63, 448 S.E.2d 581 (Ct.App.1994).

We conclude Restatement (Second) of Torts § 429 is a major departure from the analysis required under existing South Carolina case law and arguably employs a more subjective test; that being, the "reasonable belief" of the plaintiff. We decline to adopt it in the absence of guidance from our supreme court.

### III. ADDITIONAL TIME FOR DISCOVERY

█ Osborne finally contends the trial judge erred in granting summary judgment because more time was needed to complete discovery regarding McLeod's respondeat superior liability for the acts or omissions of McLeod's nursing/technician staff. We disagree.

█ "The rulings of a trial judge in matters involving discovery will not be disturbed on appeal absent a clear showing of an abuse of discretion." *Hook v. Rothstein,* 281 S.C. 541, 555, 316 S.E.2d 690, 699 (Ct.App.1984). An abuse of discretion occurs when the trial judge's ruling is based upon an error of law or, when based on factual conclusions, is without evidentiary support. *Fontaine v. Peitz,* 291 S.C. 536, 354 S.E.2d 565 (1987).

"The appellate court will generally make all reasonable presumptions to the effect that the discretionary powers of the trial court have been exercised properly, correctly, or without abuse, and will not presume, or assume, that there has been an abuse of discretion." 5 C.J.S. *Appeal and Error* § 773 (1993). Great weight is given to the judgment of the trial court on discretionary matters. *Id.* § 772(a).

In this case, Osborne gave birth on May 21, 1993. She filed her negligence action against McLeod and the other defendants on May 17, 1996. One year later, in May of 1997, McLeod moved for summary judgment, contending Osborne failed to establish a genuine issue of material fact as to any negligence committed by McLeod and presented no expert witnesses establishing McLeod's negligence.

After a hearing, the trial court issued an order dated October 27, 1997, holding the summary judgment motion in abeyance for forty-five days, allowing Osborne additional time to present affidavits or other evidence in opposition to the motion. Osborne submitted her own affidavit, her attorney's affidavit which generally referred to "qualified medical expert(s)," and an affidavit from Dr. David Abramson that did not refer to any negligence on the part of McLeod's nursing/technician staff.

After a second hearing, the trial judge granted summary judgment in favor of McLeod on January 26, 1998, finding Osborne "failed to present any expert testimony whatsoever ... which creates an issue of fact as to any negligence on the part of [McLeod]." We agree with the trial judge that Osborne failed to establish a genuine issue of material fact as to the respondeat superior liability of McLeod for its nursing/technician staff.

The hearing on McLeod's summary judgment motion was in 1997, four years after Osborne gave birth at McLeod and over a year after she filed her complaint. The trial judge allowed Osborne an additional forty-five days to conduct discovery and present affidavits and other evidence in opposition to the motion. We believe there was sufficient time for Osborne to proceed with discovery in this case and the trial judge did not abuse his discretion in refusing to allow additional time for discovery.

For the foregoing reasons, the decision of the trial judge is **AFFIRMED.**

CURETON, HEARN, and HOWARD, JJ. concur.