Beverly BEREL, Individually and as Natural Mother and Next Friend of Kelly Pilcik and Brian Pilcik, Minor Children, and Beverly Carroll, Individually and as Natural Mother and Next Friend of Kristy Berel and Jake Berel, Minor Children, Appellants,

v.

HCA HEALTH SERVICES OF TEXAS, INC., d/b/a Houston International Hospital, Appellee.

No. 01–93–00513–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 10, 1994.

Order Overruling Motion for Rehearing July 28, 1994.

Marion D. Allen, Angleton, TX, for appellant.

Doreen Zeh Bartlett, Martha R. Campbell, Houston, TX, for appellees.

Before OLIVER–PARROTT, C.J., and O'CONNOR and WILSON, JJ.

## OPINION

O'CONNOR, Justice.

The plaintiffs, Beverly Berel and her minor children, Kelly Pilcik and Brian Pilcik, and Beverly Carroll and her minor children, Kristy Berel and Jake Berel,[1] appeal the summary judgment granted in favor of the defendant, HCA Health Services of Texas, Inc., d/b/a Houston International Hospital (the hospital). They also appeal the trial court's order severing their cause of action against the hospital from the original lawsuit.

### The plaintiffs' causes of action

In their original lawsuit, the plaintiffs brought suit against Dr. Estella Robinson and the hospital. According to their petition, the plaintiffs consulted Dr. Robinson in her professional capacity as a psychiatrist, and she recommended that Kristy and Jake Berel, and Beverly Berel and her children Kelly and Brian, be hospitalized in Houston International Hospital for treatment of alleged emotional disturbances.[2] They asserted that Dr. Robinson, individually and as an agent of the hospital, was negligent in, among other things: admitting them to the hospital on the basis of "insufficient testing, observation, and/or diagnosis"; recommending inpatient treatment, which was not the least restrictive appropriate setting available; and failing to properly care for and treat them while they were in her care. The plaintiffs also alleged the doctor was negligent per se for violating several statutes. In the alternative, the plaintiffs asserted that they were hospitalized because of the doctor's fraudulent misrepresentations. The plaintiffs alleged the hospital was negligent because it knew or should have known of the malpractice committed by its agent, Dr. Robinson, and because it did not properly supervise and regulate Dr. Robinson. The plaintiffs also alleged the hospital was negligent per se for violating various provisions of the Texas Mental Health Code and the Texas Administrative Code. In the alternative, they asserted the hospital acted in concert with Dr. Robinson and was "a party to the intent to hospitalize and the fraudulent misrepresentations made" by Dr. Robinson. The plaintiffs sought recovery of medical expenses, lost wages, severe mental anguish and emotional trauma, and loss of consortium and household services.

---

1. Although the record does not reflect the relationship of the parties, it appears from the hospital's brief that at the time of the events that prompted this lawsuit, Beverly Berel was married to a man named Mark Berel. Kelly and Brian were her children from a previous marriage, and Mark was their stepfather. Beverly Carroll was Mark's ex-wife, and Kristy and Jake Berel were the children of that marriage.

2. Dr. Robinson also treated Mark Berel, although he was not hospitalized. Apparently, Mark Berel and the plaintiffs sought treatment because of intense family conflicts.

## The hospital's motion for summary judgment

In its motion for summary judgment, the hospital asserted that Dr. Robinson was an independent contractor, and that it had no right to control the details of her medical practice. It also asserted there was no connection between the care and treatment rendered by any the hospital employee and the plaintiffs' alleged injuries. The hospital relied upon the affidavit of Larry Carter, the hospital's administrator in 1989, who stated that Dr. Robinson was an independent contractor. The hospital also relied on the deposition testimony of the plaintiffs' expert witness, Dr. Grace Jameson, who stated she did not have any opinion about the hospital's compliance with the applicable standard of care.

In their response to the hospital's motion, the plaintiffs asserted, among other things, that: the hospital maintained control over the manner in which patients were treated by staff psychiatrists; there is a fact question regarding whether the hospital had the right to control the treatment rendered by staff psychiatrists to a degree that would make the hospital liable for the staff psychiatrists' negligent acts; and there is a fact question whether the hospital exercised the proper care in carrying out its statutory duties and obligations. In their response, the plaintiffs also stated that in addition to being a hospital staff psychiatrist, Dr. Robinson was employed by the hospital as its Children's Unit Director. The allegation was not supported by affidavit or other summary judgment evidence. The hospital did not directly challenge the allegation (other than claiming she was not an employee).

## Standard of review

The Supreme Court has mandated the following standards for reviewing a motion for summary judgment:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–59 (Tex.1985); *see also Clark v. Pruett*, 820 S.W.2d 903, 905–06 (Tex.App.—Houston [1st Dist.] 1991, no writ).

■ When, as here, the trial court's order granting summary judgment does not specify the ground or grounds upon which it relied for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

In their brief, the plaintiffs have not framed their complaints in points of error that comply with the requirements of TEX. R.APP.P. 74(d). It is clear from their brief, however, they believe the trial court erred in granting the hospital's motion for summary judgment because issues of material fact exist concerning whether the hospital retained sufficient control over Dr. Robinson's practice in the hospital so as to be vicariously liable for her negligence, and whether the hospital exercised proper care in carrying out its statutory duties.

## Vicarious liability

■ The general rule is that a hospital is not liable for the negligent acts or omissions of independent physicians. *Jeffcoat v. Phillips*, 534 S.W.2d 168, 172 (Tex.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). No respondeat superior liability attaches where the physician is an independent contractor and not an employee or servant of the hospital. *Id.* A doctor who has been selected by the patient is generally considered to be an independent contractor with regard to the hospital at which the doctor has staff privileges. *Id.* at 173. If it is shown that no employer-employee, principal-agent, partnership, or joint venture relationship exists between the hospital and the doctor, the hospital is not liable for the negligence of a doctor who has been chosen by the patient. *See id.*

■ If, however, a hospital retains the right to control the details of the work to be

performed by a contracting party, a master-servant relationship exists that will authorize the application of the doctrine of respondeat superior. *Gladewater Mun. Hosp. v. Daniel,* 694 S.W.2d 619, 621 (Tex.App.—Texarkana 1985, no writ). It is the *right* of control, not actual control, that gives rise to a duty to see that the independent contractor performs his work in a safe manner. *Owens v. Litton,* 822 S.W.2d 794, 797 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Where an employer is interested in only the results, and the contracting party independently determines the details of the method by which the desired results are attained, an independent contractor relationship exists and the doctrine of respondeat superior has no application. *Gladewater Mun. Hosp.,* 694 S.W.2d at 621. Unless the evidence is conclusive and reasonably susceptible to only one inference, the question whether a person is an employee or an independent contractor is generally one of fact. *Sparger v. Worley Hosp., Inc.,* 547 S.W.2d 582, 583 (Tex.1977); *Dougherty v. Gifford,* 826 S.W.2d 668, 678 (Tex.App.—Texarkana 1992, no writ).

■ The hospital relies on Carter's affidavit as conclusive evidence that Dr. Robinson was an independent contractor. Carter's affidavit stated: Dr. Robinson was a member of the hospital's medical staff in 1989, and was allowed to admit and treat private patients in the hospital; the hospital had no right and made no attempt to exercise control over the details of Dr. Robinson's medical practice; Dr. Robinson was at all times an independent contractor and was not employed by the hospital; and the adult plaintiffs independently requested Dr. Robinson's services.

The plaintiffs rely on Dr. Robinson's deposition testimony. She testified that the hospital's staff included a "quality assurance person" who "reviewed charts to ... assure appropriate patient care." The plaintiffs' trial counsel asked Dr. Robinson additional questions regarding the quality assurance person:

Q. If that quality assurance person felt like that there had been an over utilization or an under utilization, what would they do?

A. As far as I can recall that person would discuss that with the doctor and also would—would write those recommendations up in a particular form as—as best of my recall and we present that to the particular doctor who's treating the patient and could also possibly—feeling that needed further information or clarification or whatever—talk with the medical director and also possibly the medical director of the—of the hospital and also possibly the utilization review committee.

Q. Could the utilization review committee and the medical director of the hospital override the admitting physician's orders?

A. Yes.

Q. Okay. Did the utilization review committee and the medical director have authority to discharge a patient that they thought was—had been admitted or did not need the services of Houston International Hospital?

A. The medical director of the utilization review committee as far as my recall, there were appropriate procedures if they felt that the patient was not being administered appropriate treatment and needed—needed to—which would be if the patient did not need to be there, they could have overruled the admitting physician's order.

Q. And have the patient discharged?

A. If that was what was indicated that was needed.

(Emphasis added.)

We agree with the plaintiffs that Dr. Robinson's own testimony raises a fact question regarding whether the hospital maintained control over Dr. Robinson's treatment to a degree that would make the hospital liable for her negligent acts. We sustain this point of error.

### Statutory liability

The plaintiffs assert that provisions of the version of the Texas Mental Health Code in effect in 1989 imposed certain statutory duties upon the hospital. *See* Tex.Rev.Civ.

STAT. art. 5547–1.[3] They argue that "a question of fact exists as to whether or not the hospital exercised the proper care in carrying out their [sic] duties and obligations required by law."

The plaintiffs assert that the hospital was under a "statutory mandate to control staff psychiatrists, such as Dr. Robinson." They rely on various provisions of the former statute. Article 5547–89 [4] provided:

Every licensed private mental hospital shall be in the charge of a physician who is certified by the American Board of Psychiatry and Neurology or by the American Osteopathic Board of Psychiatry and Neurology or who has had at least three years experience as a physician in psychiatry in a mental hospital.

Article 5547–82 [5] provided:

The head of an in-patient mental health facility shall provide adequate medical and psychiatric care and treatment for every patient in accordance with the highest standards accepted in medical practice. The head of an in-patient mental health facility may give the patient accepted psychiatric treatment and therapy.

Article 5547–80(b) [6] provided:

All patients receiving mental health services pursuant to the provisions of this code have the following rights: (1) to appropriate treatment for their mental illness in the least restrictive appropriate setting available. . . .

Article 5547–9(b) [7] provided:

[A] power granted to or a duty imposed upon the head of a facility may be exercised or performed by an authorized, qualified designee, but the delegation of a duty does not relieve the head of a facility from his responsibility.

A statute can create a duty that does not exist at common law. *See Dutcher v. Owens,* 647 S.W.2d 948, 951 (Tex.1983). The quoted provisions of article 5547 require the following of a mental hospital: It must be run by a qualified physician; the physician in charge must provide adequate treatment for every patient according to "the highest standards accepted in medical practice"; the physician in charge may delegate powers and duties to qualified designees; however, by delegating duties, the physician in charge is does not relieved of responsibility.

Courts are responsible for truly and fairly interpreting written law. *Glyn–Jones v. Bridgestone/Firestone, Inc.,* 857 S.W.2d 640, 642 (Tex.App.—Dallas 1993, writ granted). We begin our analysis by reviewing the statute. *Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983). If the statute is clear and unambiguous, extrinsic aids and rules of statutory construction are not necessary. *Ex parte Roloff,* 510 S.W.2d 913, 915 (Tex.1974); *Glyn–Jones,* 857 S.W.2d at 642. When we construe a statute, we presume the legislature intended the entire statute to be effective. TEX.GOV'T CODE ANN. § 311.021(2). We must follow the clear language of the statute. *Glyn–Jones,* 857 S.W.2d at 642.

Here, the Mental Health Code specifically imposes duties upon mental hospitals in addition to any duties imposed upon hospitals by the Texas Hospital Licensing Law.[8] The Mental Health Code provides that mental hospitals have a non-delegable duty to their patients to provide adequate medical and psychiatric care. The plaintiffs claim the hospital breached that duty. Because there are fact issues that must be submitted to the jury, the summary judgment was not proper.

---

**3.** Act of May 20, 1957, 58th Leg., R.S., ch. 243, 1957 Tex.Gen.Laws 505, *amended by* Act of April 21, 1983, 68th Leg., R.S., ch. 47, 1983 Tex.Gen. Laws 211, 261, *repealed by* Act of May 10, 1991, 72nd Leg., R.S., ch. 76, 1991 Tex.Gen.Laws 515, 515 (current version at TEX.HEALTH & SAFETY CODE § 571.001).

**4.** Article 5547–89 is now located in HEALTH & SAFETY CODE § 577.008.

**5.** Article 5547–82 is now located in HEALTH & SAFETY CODE § 576.022.

**6.** Article 5547–80(b) is now located in HEALTH & SAFETY CODE § 576.021(1).

**7.** Article 5547–9 is now located in HEALTH & SAFETY CODE § 571.007.

**8.** TEX.HEALTH & SAFETY CODE ANN. § 241.001.

We sustain this point of error.

We reverse the judgment of the trial court.

WILSON, J., dissenting without opinion.

## OPINION ON MOTION
## FOR REHEARING

The Court today considered appellee's motion for rehearing. The motion is overruled.

OLIVER–PARROTT, C.J., concurring.

WILSON, J., dissenting.

OLIVER–PARROTT, Chief Justice, concurring.

I concur in the majority's finding a fact issue as to whether there is potential liability on the part of a psychiatric hospital in this particular case. In light of the dissent's comments, however, I believe it is important to emphasize that this case does not involve a vague right to control the physician's admission and treatment of patients with general allegations of physician negligence. The plaintiffs asserted they were injured by being unnecessarily restrained in a mental health facility. They asserted they spoke directly to the hospital staff and requested release. The staff psychiatrist and defendant doctor testified specifically that the utilization review committee could overrule an admitting physician and discharge any patient if their admission or treatment was inappropriate. There is, therefore, at least a fact issue as to the hospital's own negligence and its ability to control the admitting physician insofar as timely discharge.

WILSON, Justice, dissenting.

I would grant the motion for rehearing and affirm the trial court's granting of appellee's summary judgment motion.

I respectfully suggest the majority errs when it finds a disputed fact issue over the hospital's "right of control" of the physician in a discussion of the hospital's "utilization review committee." Although the majority's reasons for so concluding are unstated, it apparently rests in the hospital's *right* (emphasized by the majority), through the review committee, to discharge a patient by an exercise of its independent judgment. I would hold that being able to "override" or "overrule" an admitting physician's order in the abstract is no evidence of "controlling" the details of a physician's work in this case.[1]

There is a fundamental difference between suing a hospital for its own acts of negligence, and holding a hospital vicariously liable for the acts of physicians admitting and treating patients in the hospital. Likewise, there is a fundamental factual difference between a hospital controlling the details of a physician's work, which would permit vicarious liability, and the maintenance of a right to make some abstract ultimate judgment regarding the patient contrary to the wishes of the physician. Evidence that may tend to show negligence on the part of a hospital directly in this case is not evidence that a hospital may be vicariously liable.

If the hospital's right to make a judgment relative to the treatment of a patient in its own facilities raises a fact issue over whether the hospital controls the details of the physician's work, how does the hospital protect itself from being found vicariously liable for the actions of its admitting physicians? But more basically, if a hospital maintains this right of review of its physicians, how would it protect itself from the expenses of litigation in defending against every negligent act of a physician committed within its facilities?

For this and other reasons, I dissent from the majority's opinion and denial of motion for rehearing.

---

1. We may overrule the Honorable trial judge that heard this motion for summary judgment, but I doubt we control his actions in any meaningful sense.