**Rhea SAMPSON, Appellant,**

v.

**BAPTIST MEMORIAL HOSPITAL SYSTEM, Appellee.**

No. 04–95–00910–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 13, 1996.

Rehearing Overruled March 14, 1997.

Oliver S. Heard, Jr., Heard, Goggan, Blair & Williams, Karl E. Hays, Law Offices of Karl E. Hays, San Antonio, for appellant.

Ruth Greenfield Malinas, Michele Barber Chimene, George F. Evans, Jr., Ball & Weed, P.C., San Antonio, for appellee.

Before RICKHOFF, HARDBERGER and DUNCAN, JJ.

RICKHOFF, Justice.

Appellant, Rhea Sampson ("Sampson"), appeals from a summary judgment granted in favor of appellee, Baptist Memorial Hospital System ("BMHS"), in a medical negligent treatment action. Although BMHS' evidence included both posted signage and an executed consent to treatment form stating "each physician is an independent contractor," Sampson contends the summary judgment was erroneously granted because a genuine issue of material fact was raised as to whether Dr. Mark Zakula, the emergency room attending physician ("Zakula"), was an employee or ostensible agent of BMHS. We reverse the judgment of the trial court and remand the cause for trial.

## FACTS

Sampson was bitten on the arm by an unknown insect on March 23, 1990, and was taken to the emergency room at Southeast Baptist Hospital, an affiliate of BMHS. Sampson was treated by Dr. Susan Howle, who diagnosed Sampson as having a reaction to an insect, gave her a shot of Benadryl, a shot of pain medication and two prescriptions for pain and swelling and released her. Early in the morning on March 25, 1990, Sampson returned to the hospital by ambulance and was seen by Zakula, who confirmed Howle's diagnosis, gave Sampson some additional shots and released her at approximately 3:00 a.m. Approximately fourteen hours later, Sampson was taken to a different hospital and admitted to the intensive care ward in septic shock. The insect that had bitten Sampson was then identified as a brown recluse spider.

Sampson brought suit against Howle and Zakula claiming negligent treatment. Sampson also sued BMHS contending, among other claims, that BMHS was vicariously liable for the negligence of Zakula because he was an employee or ostensible agent of BMHS.

BMHS moved for summary judgment on Sampson's vicarious liability and negligent treatment claims. The trial court granted the summary judgment in favor of BMHS and severed these claims from the remaining action, thereby making the summary judgment final for purposes of appeal.[1] Sampson appeals the trial court's judgment contending that a genuine issue of material fact was raised as to whether Zakula was an employee or ostensible agent of BMHS.

## STANDARD OF REVIEW

In order to prevail on summary judgment, the movant must disprove at least one of the essential elements of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). This burden requires the movant to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In

---

1. During oral argument, Sampson's attorney commented that the trial judge, the Hon. David Peeples, parenthetically remarked that this would be a suitable issue for our court to resolve. We suspect he actually meant by this surplusage that the Texas Supreme Court should resolve the issue since it will impact so many relationships in the medical field. We have, therefore, advanced a more complete explication than we ordinarily would.

determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in favor of the non-movant. *Id.; see also Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995). Any doubt is resolved in favor of the non-movant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d at 548–49; *see also Doe*, 907 S.W.2d at 477.

Where the non-movant opposes a summary judgment based upon an affirmative defense, the non-movant must produce sufficient summary judgment evidence to raise a question of fact as to each element of the affirmative defense in order to avoid summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–79 (Tex.1979). The movant is not required to negate every possible issue of law and fact that could have been raised by the non-movant, but rather the burden of raising and producing sufficient evidence with respect to affirmative defenses is on the non-movant. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d at 678–79.

### RESPONDEAT SUPERIOR

■ In general, an employer is not legally responsible for the negligent acts of an independent contractor. *Crow v. TRW, Inc.*, 893 S.W.2d 72, 78 (Tex.App.—Corpus Christi 1994, no writ). Physicians are generally considered to be independent contractors with regard to hospitals at which they have staff privileges. *Brown v. Montgomery County Hosp. Dist.*, 905 S.W.2d 481, 484 (Tex.App.—Beaumont 1995, no writ); *Dumas v. Muenster Hosp. Dist.*, 859 S.W.2d 648, 651 (Tex. App.—Fort Worth 1993, no writ); *Harris v. Galveston County*, 799 S.W.2d 766, 768 (Tex. App.—Houston [14th Dist.] 1990, writ denied). Thus, it would generally follow that a hospital is not liable for the negligent acts of independent physicians. *Drennan v. Community Health Inv. Corp.*, 905 S.W.2d 811, 818 (Tex.App.—Amarillo 1995, writ denied); *Berel v. HCA Health Services of Texas, Inc.*, 881 S.W.2d 21, 23 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Stated differently, under the general rule, no respondeat superior liability attaches where a physician is an independent contractor rather than an employee of the hospital. *Berel v. HCA Health Services of Texas, Inc.*, 881 S.W.2d at 23.

■ The standard test for distinguishing between an independent contractor and employer/employee situation is whether the employer retains the right to control the performance of the individual. *Id.* It is the right to control, not actual control, which is determinative, and the right to control must extend to both the means and details of the work, as well as the end result. *Id.; Dougherty v. Gifford*, 826 S.W.2d 668, 678 (Tex. App.—Texarkana 1992, no writ). In addition to the right to control, courts are also required to examine: (1) the independent nature of the contractor's business; (2) the obligation to supply necessary tools, supplies and materials; (3) the time for which the person is employed; and (4) the method by which the person is paid. *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 786 (Tex.App.—El Paso 1996, writ requested); *Dougherty v. Gifford*, 826 S.W.2d at 678.

■ Where no dispute exists regarding the controlling facts, and only one reasonable conclusion can be inferred, the question of whether a physician is an employee or an independent contractor is a question of law. *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d at 786; *Hoechst Celanese Corp. v. Compton*, 899 S.W.2d 215, 220 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Wackenhut Corp. v. Perez*, 865 S.W.2d 86, 89 (Tex.App.—Corpus Christi 1993, writ denied). Conversely, if the evidence is not conclusive but may be reasonably susceptible to more than one inference, the question is one of fact. *Berel*, 881 S.W.2d at 24; *Dougherty*, 826 S.W.2d at 678.

■ In support of its motion for summary judgment, BMHS presented the affidavit of James Potyka, a physician who had worked in BMHS emergency rooms for twenty-two years. Dr. Potyka stated in his affidavit that the physicians that work at BMHS are "independent, licensed physicians and not subject to the supervision, management, direction, and control of any Baptist Hospital." Dr.

Potyka also stated that the individual emergency room physicians do not have an individual contractual relationship with the hospital but only have privileges to practice at the hospital. Dr. Potyka further stated that "Baptist Hospital did not collect or retain fees for services rendered by the emergency room physicians;" rather, the physicians bill for the services they provide.

In response, Sampson presented her own affidavit in which she stated: "I believed then, and continue to do so, that the emergency room physicians' services were rendered by the Southeast Baptist Hospital and Baptist Memorial Hospital System, or by its servants." This response by Sampson, however, does not controvert the affidavit testimony of Dr. Potyka. Sampson presented no summary judgment evidence to show that BMHS controlled the details or the methods used in performing emergency services to counter Dr. Potyka's assertion that BMHS does not supervise, manage, direct or control such work. In addition, Dr. Potyka's statement that Dr. Zakula would independently bill for his services was not refuted. Therefore, we agree with the trial court that the summary judgment evidence showed that Zakula was not an employee of BMHS.

## OSTENSIBLE AGENCY

In addition to contending that Zakula was an employee of BMHS, Sampson also asserted, in the alternative, that Zakula was BMHS' ostensible agent.

### 1. Vicarious Liability Theories and Burden in Summary Judgment Setting

Whether labeled "ostensible agency," "apparent authority," or "agency by estoppel," two distinct theories of vicarious liability have been recognized by this court and by various courts in other jurisdictions to impose liability on a hospital for the negligence of emergency room physicians. *Baptist Memorial Hosp. System v. Smith,* 822 S.W.2d 67, 72–73 (Tex.App.—San Antonio 1991, writ denied); *see also Clark v. Southview Hosp. & Family Health Ctr.,* 68 Ohio St.3d 435, 628 N.E.2d 46, 52–53 (Ohio 1994)(recognizing utilization of both theories and citing cases from numerous jurisdictions adopting theories); *Pamperin v. Trinity Memorial Hosp.,* 144 Wis.2d 188, 423 N.W.2d 848, 854–55 (Wis.1988)(noting courts frequently look to two sections of the Restatements); *Martell v. St. Charles Hosp.,* 137 Misc.2d 980, 523 N.Y.S.2d 342, 350 (N.Y.Sup.Ct.1987)(citing other jurisdictions for proposition that recognition of vicarious liability is near-unanimous rule); *see generally* Martin C. McWilliams, Jr. & Hamilton E. Russell, III, *Hospital Liability for Torts of Independent Contractor Physicians,* 47 S.C. L.Rev. 431, 447–452, 457–462 (1996)(analyzing both Restatement provisions). One of these theories is based on § 267 of the RESTATEMENT (SECOND) OF AGENCY,[2] referred to herein as "agency by estoppel," while the other theory is based on § 429 of the RESTATEMENT (SECOND) OF TORTS,[3] referred to herein as "apparent agency." *Smith,* 822 S.W.2d at 72–73. Since prior cases have not always succinctly drawn a distinction between these two theories, it is important to carefully analyze the language of the cases to determine the theory applied, rather than relying on the label attached. *See generally* Comment, *The Doctrine of Apparent Authority in Illinois Medical Malpractice Cases: An Argument for Its Application,* 18 S. Ill. U. L.J. 195, 210–11 (1993)(criticizing confusion of labels used in applying theories); Bradford C. Kendall, *Tort Law: The Ostensible Agency Doctrine: In Search of the Deep Pocket?,* 57 UMKC L. REV. 917, 924 (1989)(noting confusion and use

---

**2.** Section 267 provides:

One who represents that another is his servant or other agent and thereby causes a third party justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such. RESTATEMENT (SECOND) OF AGENCY § 267 (1958).

**3.** Section 429 provides:

One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants. RESTATEMENT (SECOND) OF TORTS § 429 (1965).

of different language to describe the same phenomena).

■ Vicarious liability based on the "agency by estoppel" theory is generally more difficult to prove because a representation or holding out and actual reliance must be shown. *Jackson v. Power*, 743 P.2d 1376, 1380 (Alaska 1987)(noting actual reliance requirement); *see generally* Martin C. McWilliams, Jr. & Hamilton E. Russell, III, *Hospital Liability for Torts of Independent Contractor Physicians*, 47 S.C. L.Rev. at 448 (noting theory presents substantial difficulties to plaintiffs); G. Keith Phoenix and Anne L. Schlueter, *Hospital Liability for the Acts of Independent Contractors: The Ostensible Agency Doctrine*, 30 ST. LOUIS U.L.J. 875, 885 (1986)(noting inherent proof problem). Agency by estoppel is comprised of the following three elements: (1) a third party has a reasonable belief in an agent's authority; (2) the belief is generated by some holding out by act or neglect of the principal; and (3) the third party justifiably relies on the representation of authority. *McDuff v. Chambers*, 895 S.W.2d 492, 498 (Tex.App.—Waco 1995, writ denied); *Lopez v. Central Plains Regional Hosp.*, 859 S.W.2d 600, 605 (Tex.App.—Amarillo 1993, no writ). In applying the theory, however, courts have fought against a rigorous application of the elements in order to achieve what has been perceived by one commentator as a result-oriented outcome favorable to the plaintiff. Martin C. McWilliams, Jr. & Hamilton E. Russell, III, *Hospital Liability for Torts of Independent Contractor Physicians*, 47 S.C. L.Rev. at 451. In reaching this result, the commentator contends these courts "assume away or ignore great chunks of the required analysis." *Id.*

■ Under apparent agency, the alternative theory for holding a hospital vicariously liable for the negligence of its emergency room physicians, only two elements are required to be shown: (1) the patient must look to the hospital, rather than the individual physician, for treatment; and (2) the hospital must "hold out" the physician as its employee. *Jackson v. Power*, 743 P.2d at 1376; *Clark v. Southview Hospital & Family*

*Health Ctr.*, 628 N.E.2d at 53. Therefore, under this theory, reliance need not be shown. *Jackson v. Power*, 743 P.2d at 1380; Jim M. Perdue, *Medical Malpractice and Hospital Liability in Texas*, *in* STATE BAR OF TEXAS PROF. DEV. PROGRAM, 10 ADVANCED PERSONAL INJURY LAW COURSE Q, Q–61 (1994).

Both agency by estoppel and apparent agency are affirmative defenses under TEX.R. CIV. P. 94. *Smith v. Baptist Memorial Hosp. System*, 720 S.W.2d 618, 622–23 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). Therefore, Sampson had the burden of producing summary judgment evidence sufficient to raise an issue of fact as to each element of these defenses in order to successfully oppose summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d at 112; *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d at 678–79.

## 2. Evidence in the Instant Case

BMHS attached to its motion for summary judgment the affidavit of James Potyka, M.D., who stated: (1) he is an emergency room physician and had worked in BMHS emergency rooms for 22 years; (2) it was his expert opinion that Dr. Zakula was ultimately responsible for Sampson's treatment; (3) Dr. Zakula was not a hospital employee; (4) all physicians working at the hospital are independent, licensed physicians as evidenced by the consent forms signed by patients prior to treatment; (5) there is signage in the emergency room that notifies patients that the emergency room physicians are independent contractors and that the signage was in place when Sampson was in the emergency room; and (6) BMHS did not collect or retain fees for the physicians' services, instead the physicians bill for the services they provide.

BMHS also presented copies of the consent forms allegedly executed by Sampson as summary judgment evidence. The consent forms acknowledge that the physicians providing professional services are independent contractors and that the hospital is not re-

sponsible for their judgment or conduct.[4]

Sampson attached her personal affidavit to her response. In her affidavit, Sampson stated: (1) she did not see any signs stating that the doctors were not employees of BMHS; (2) she was never told that the doctors were not employees; (3) she believed the doctors were employees; (4) she was not given a choice as to which doctor would treat her; (5) she asked only for treatment not for a specific doctor; and (6) she did not recall being shown the consent form nor did she recall signing the document. Although Sampson admitted in her deposition that she was mentally alert upon her presentation at the hospital for treatment, she also stated that she was in a lot of pain, and she did not remember what happened once she arrived at the emergency room.

### 3. Analysis

We initially analyze whether the summary judgment was properly granted under the apparent agency theory of vicarious liability. In order to defeat BMHS' motion under this theory, Sampson was required to produce sufficient summary judgment evidence to raise an issue of fact as to each of the following elements: (1) the patient must look to the hospital, rather than the individual physician, for treatment; and (2) the hospital must "hold out" the physician as its employee.

█ Sampson stated in her affidavit that she arrived at BMHS and asked for treatment not for a specific doctor. BMHS did not controvert this statement; therefore, Sampson's affidavit contained sufficient summary judgment evidence to raise an issue of fact as to whether Sampson looked to the hospital, not Dr. Zakula, for treatment. *Contra Lopez,* 859 S.W.2d at 605 (plaintiff had ongoing relationship with physician prior to hospital admission).

With respect to the second element, the increasing trend among the courts in other jurisdictions is to hold this second requirement to be satisfied when the hospital holds itself out to the public as a provider of emergency medical services. *Clark v. Southview Hospital & Family Health Ctr.,* 628 N.E.2d at 53; *White v. Methodist Hosp. South,* 844 S.W.2d 642, 648 (Tenn.Ct.App.1992). These courts note modern-day hospitals have become large, well-run businesses that spend enormous dollars competitively advertising their services to induce patients to utilize their services. *Id.; Hardy v. Brantley,* 471 So.2d 358, 371 (Miss.1985)(noting hospitals' marked increase in advertisements offering quality health care services). Therefore, courts generally imply the "holding out" requirement from the circumstances where the hospital offers emergency services. *Pamperin v. Trinity Memorial Hosp.,* 423 N.W.2d at 856–57; *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255, 256 (Ky.1985). The courts also note, however, that a different result may follow where the hospital provides notice to the patient, thereby eliminating the implication that the physician is an employee. *Stewart v. Midani,* 525 F.Supp. 843, 853 (N.D.Ga.1981)(asserting that simple notice may be sufficient to put patient on notice of actual relationship); *Pamperin v. Trinity Memorial Hosp.,* 423 N.W.2d at 856 (noting assumption that physician is employee is not

---

4. The acknowledgment contained in paragraph 3 of the consent to treatment form provides:

I acknowledge and agree that Baptist Medical Center, Northeast Baptist Hospital, Southeast Baptist Hospital, North Central Baptist Hospital and any Hospital operated as a part of Baptist Memorial Hospital System, is not responsible for the judgment or conduct of any physician who treats or provides a professional service to me, but rather each physician is an independent contractor who is self-employed and is not the agent, servant or employee of the hospital. I further understand that other physicians may be called upon to provide care, either directly (as consultants) or indirectly through professional services (i.e. radiology, Pathology, EKG interpretations, Anesthesiology). These physicians are also independent contractors who are self-employed and are not the agents, servants or employees of the hospital. It is also understood that for emergency or unscheduled services, the hospital may aid my selection of physicians by an established "on-call" roster provided through each department of the hospital. These physicians are also independent contractors who are self-employed and are not the agents, servants, or employees of the hospital. I further agree the hospital is not responsible for the judgment or conduct of any of the physicians identified above.

natural if patient is put on notice of independent status); *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d at 256 (inference available absent evidence that patient knew physician was not hospital employee). In the instant case, BMHS contended that sufficient notice was provided to make the general inference that BMHS held Dr. Zakula out as an employee unreasonable. BMHS contended such notice was provided by the signs posted on the emergency room walls and the consent forms executed by Sampson.

Although Dr. Potyka did state in his affidavit that there was signage in the emergency room regarding the independent status of the emergency room physicians, Sampson stated that she did not see any signs. There was no evidence presented by BMHS regarding the number or conspicuousness of the signs. Therefore, we find Sampson's affidavit raises a question of fact as to whether the signs were sufficient notice.

With respect to the consent forms, Sampson stated that she did not recall being shown the consent form nor did she recall signing the document. In *Paramount Nat. Life Ins. Co. v. Williams*, 772 S.W.2d 255, 262 (Tex.App.—Houston [14th Dist.] 1989, writ denied), the court of appeals held that a disclaimer in a document was insufficient to negate the apparent authority with which an insurance company had clothed its agent. The court noted that it was unreasonable to expect a sixty-four year old uneducated woman to understand the limitation on the agent's authority in that instance. *Id.* Similarly, we find that the nature of the circumstances under which Sampson sought emergency room services coupled with her statement that she did not recall signing the consent forms were sufficient to raise a question of fact as to whether Sampson was in a position to understand the terms of the forms.

Although we find that an issue of fact was raised in the instant case as to each element of the defense of apparent agency, we feel compelled by the manner in which the law has developed in this area to take our analysis one step further.

In the initial opinion issued by this court in this area, we reversed a summary judgment granted in favor of BMHS asserting that the simple fact that the emergency room physician "manifested the authority of a competent physician placed the fact issue of ostensible agency in issue." *Smith v. Baptist Memorial Hosp. System*, 720 S.W.2d 618, 625 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). We then implied that irrespective of any other fact, if a hospital includes an emergency room as part of its facilities, the appearance of agency is sufficient to defeat a summary judgment, asserting:

> Sound public policy demands that when an institution calls itself a "full service hospital" and includes an emergency room as part of its facilities, that institution makes a special statement to the public when it opens its emergency room to provide emergency care for people. An agency by estoppel is established by creating the effect that the appearance that hospital's agents, not independent contractors, will provide medical care to those who enter the hospital. The appearance is what the patient observes and which he relies upon when entering a full-service hospital.

*Id.* at 625 (citations omitted). We cited with approval the decision in *Hannola v. City of Lakewood*, 68 Ohio App.2d 61, 426 N.E.2d 1187, 1190 (1980), wherein it was held that a hospital would be liable to an injured patient for acts of malpractice committed in its emergency room regardless of any contractual arrangements with independent contractors, provided that proximate cause and damages were present. *Smith*, 720 S.W.2d at 625. We then concluded that the rationale employed in *Hannola* was simple: "the patient who relies on the ostensible agency might have acted differently with knowledge that there was no actual agency." *Id.* We agreed with that approach, concluding "[a] person who is ill or injured and needs treatment will turn to his local hospital to provide it regardless of prior notice that the physicians are independent contractors. After all, the injured or ill person chooses [the hospital] not the [emergency room physician] for treatment." *Id.* These last two sentences imply that even if actual prior notice of the existence of an independent contractor rela-

tionship was provided, the hospital would remain vicariously liable.

After the summary judgment in the *Smith* case was reversed, the case was tried to a jury, and the trial court's judgment entered after the jury's verdict was again appealed to this court. *Baptist Memorial Hosp. System v. Smith*, 822 S.W.2d 67 (Tex.App.—San Antonio 1991, writ denied). In the second appeal, we first rejected the hospital's contention that the doctrines of ostensible agency and agency by estoppel were not recognized in Texas under the factual circumstances of that case. *Id.* at 70. We relied upon the law of the case and our prior decision in light of the Supreme Court's denial of the application for writ of error in the prior case. *Id.* at 73. We then addressed the hospital's challenge to the sufficiency of the evidence to support the jury's finding of ostensible agency. *Id.* at 74. We held the evidence to be sufficient to support the finding, noting the following: (1) the emergency room receptionist collected the fees for the physician; (2) the patient would not likely know the relationship between the contracting physicians and the hospital; (3) the patient requested to be seen by an emergency room physician because he had no personal physician, and the admitting clerk asked the patient if he wanted to see one of "our" doctors; (4) no notices in the emergency room advised patients about the contractual arrangement; (5) the hospital expected the emergency room physicians to render proper care to emergency room patients; (6) the permission to treat form referred only to the hospital and the "chosen physician" and not the specific emergency room treating physician; and (7) BMHS advertised its hospital emergency rooms as being staffed 24 hours a day by licensed physicians. *Id.* at 75–77.

The language in the second *Smith* opinion seems to depart from the concept introduced in the first decision that ostensible agency can arise simply from the nature of emergency room services, i.e., the imposition of liability based on public policy when a "full service hospital" provides emergency room services. In the second opinion, we noted that there were no notices in the emergency room advising patients that the physicians were independent contractors. *Id.* at 75. In addition,

we referred to the murky relationship between the hospital and the emergency room physicians created by the hospital's failure to notify or draw the patient's attention up front to the contractual nature of the service arrangement. *Id.* at 77. This language implies that where the patient is notified prior to receiving services and signs are conspicuously posted, the "holding out" element of vicarious liability would be absent. Thus, the two opinions appear to be in conflict as to the effect prior notice of the contractual relationship should have.

Seizing upon the language in the second *Smith* opinion, hospitals, like BMHS, will continue to take actions in an effort to provide sufficient notice to negate the "holding out" element. Although we have found a fact issue regarding the sufficiency of the notice in the instant case, we anticipate future cases in which the summary judgment evidence will show as a matter of law that prior notice of the contractual relationship was given by the hospitals. Thus, we take an additional step in our analysis to consider whether notice provided in consent forms and posted in emergency rooms can ever be sufficient to negate a hospital's "holding out" given the exigencies of the circumstances in which patients seek emergency medical treatment.

In *Clark v. Southview Hospital & Family Health Ctr.*, 628 N.E.2d at 54 & n. 1, the Ohio Supreme Court asserted that notice that care is being provided by independent practitioners must be provided at a meaningful time. Contrary to the dissenting justice's contention in *Pamperin v. Trinity Memorial Hosp.*, 423 N.W.2d at 861 (Steinmetz, J., dissenting), the court then stated that posting signs in an emergency room will rarely provide the patient with the ability to choose at a meaningful time. *Clark v. Southview Hospital & Family Health Ctr.*, 628 N.E.2d at 54 n. 1. Quoting one commentator's criticism of the *Pamperin* dissent, the court concluded:

> The plaintiff, who by definition is injured and under stress, is relying upon the hospital to provide the services that the hospital has held out that it can provide. The plaintiff's reliance upon the hospital's com-

petence has been demonstrated by her walking (or being wheeled) into the emergency room. Simply informing her that some doctors and staff have a different technical relationship with the hospital than the one she expected does not lessen the reasonableness of her reliance upon the hospital. Even if the patient understood the difference between an employee and an independent-contractor relationship, informing her of the nature of the relationship after she arrives is too late. The purpose of any notice requirement is to impart knowledge sufficient to enable the plaintiff to exercise an informed choice. The signs suggested by the dissent are too little, too late.

*Id.* (quoting Note, *Pamperin v. Trinity Memorial Hospital and the Evolution of Hospital Liability: Wisconsin Adopts Apparent Agency,* 1990 WIS. L. REV. 1129, 1147 (1990)).

■ Preventing hospitals from avoiding liability by notifying a patient upon presentation at the emergency room of a physician's independent status, however, would merely be one more judicial step in eliminating the liability loopholes currently available to hospitals in the emergency room setting. The preclusion of last minute notification could simply lead to more far-reaching general notices by hospitals contained in advertisements and other literature in an effort to avoid vicarious liability. Now, we see this as an unavailing step. Because we do not believe hospitals should be allowed to avoid such responsibility, we encourage the full leap—imposing a nondelegable duty on hospitals for the negligence of emergency room physicians.

Emergency rooms are aptly named and vital to public safety. There exists no other place to find immediate medical care. The dynamics that drive paying patients to a hospital's emergency rooms are known well. Either a sudden injury occurs, a child breaks his arm or an individual suffers a heart attack, or an existing medical condition worsens, a diabetic lapses into a coma, demanding immediate medical attention at the nearest emergency room. The catch phrase in legal nomenclature, "time is of the essence," takes on real meaning. Generally, one cannot choose to pass by the nearest emergency room, and after arrival, it would be improvident to depart in hope of finding one that provides services through employees rather than independent contractors. The patient is there and must rely on the services available and agree to pay the premium charged for those services.

The rationale for the imposing a nondelegable duty in this situation has previously been set forth by the New York Supreme Court in *Martell v. St. Charles Hosp.* as follows:

This Court is of the further opinion that even with the knowledge that emergency room physicians were independent contractors, and not hospital employees, an individual requiring emergency room medical care, given a choice, would opt for the emergency room of the hospital which that individual perceived to have the better reputation. It is the hospital's location and reputation which draw patients to its emergency room, as well as the exigencies of the moment, and, in this regard, the contractual relationship between the hospital and the emergency room physicians is irrelevant as a practical matter.

\* \* \*

In this Court's opinion it is public policy, and not traditional rules of the law of agency or the law of torts, which should underlie the decision to hold hospitals liable for malpractice which occurs in their emergency rooms. In this regard the observation of former UNITED STATES SUPREME COURT JUSTICE OLIVER WENDALL HOLMES is apt: "The true grounds of decision are consideration of policy and of social advantage, and it is vain to suppose that solutions can be attained merely by logic and the general propositions of law which nobody disputes. Propositions as to public policy rarely are unanimously accepted, and still more rarely, if ever, are capable of unanswerable proof." (Shriver, the Judicial Opinions of Oliver Wendall Holmes, page 65).

523 N.Y.S.2d at 352.[5] The Supreme Court of Alaska has imposed such a duty. *Jackson v. Power*, 743 P.2d at 1384–85. The duty was imposed in *Jackson* after the court noted that a hospital licensed as a "general acute care hospital" is required to "insure that a physician is available to respond to an emergency at all times." *Id.* at 1382. The court held that the duty to provide physicians for emergency care is non-delegable and that a hospital may not shield itself from responsibility for the negligent performance of such care. *Id.* at 1385.

Similarly, a hospital licensed as a general hospital in Texas must make physicians available for emergency services and have an emergency service with appropriate facilities. 25 TEX. ADMIN. CODE § 133.21 (West 1996)(adopting rule contained in publication entitled Hospital Licensing Standards which requires emergency service under rule 1–14.1.1 and the provision of physicians for emergencies under rule 1–14.1.6). In addition, hospitals accredited by the *Joint Commission on Accreditation of Healthcare Organizations* ("JCAHO") must provide emergency medical services. David W. Lovisell, J.D. & Harold Williams, M.D., L.L.B., MEDICAL MALPRACTICE 16B–10 (Matthew Bender 1996). Although there are differing levels of emergency services that can be provided under JCAHO guidelines, each level recognizes the hospital's responsibility to respond to a patient presented to its facility in a crisis situation. Id. at 16B–6–16B–7.

During oral argument, BMHS contended the imposition of this type of liability conflicts with the prohibition on the corporate practice of medicine. TEX.REV.CIV. STAT ANN. art. 4495b, § 3.08(1) (Vernon Supp. 1996). BMHS asserted that since it cannot control the professional services rendered by physicians, it should not be held liable for their negligent acts. This same contention has been asserted by hospitals seeking to avoid responsibility under vicarious liability theories.[6] Various reasons have been advanced to reject this contention.

In *Hardy v. Brantley*, the Mississippi Supreme Court noted that the law permitted a hospital to be liable for the actions of a nurse, even though hospitals cannot be licensed as an R.N.; therefore, the court reasoned there was no reason to permit the corporate practice of medicine prohibition to otherwise bar liability for physicians' actions. 471 So.2d at 373; *see generally* Jim M. Perdue, *Medical Malpractice and Hospital Liability in Texas, in* STATE BAR OF TEXAS PROF. DEV. PROGRAM, 10 ADVANCED PERSONAL INJURY LAW COURSE Q, Q–65 (1994). In addition, the court reasoned that imposing liability on hospitals is no different than imposing liability on the professional corporations through which physicians practice since such professional corporations similarly are not entitled to be licensed to practice medicine. *Hardy*, 471 So.2d at 373.

Applying this same reasoning under Texas law, Texas hospitals have been held liable for the negligence of residents and nurses who were paid employees of the hospitals. *Young v. Baylor University Medical Ctr. Foundation*, 607 S.W.2d 651, 654 (Tex.App.—Fort Worth 1980, no writ); *Santa Rosa Medical Center v. Robinson*, 560 S.W.2d 751, 757 (Tex.Civ.App.—San Antonio 1977, no writ). In addition, a physician in Texas may practice medicine through a professional association, which is held jointly and severally liable for acts of professional negligence. TEX.REV. CIV. STAT. ANN. art. 1528f §§ 2–3, 24 (Vernon 1980 & Supp.1996). Therefore, the corporate practice of medicine prohibition should not be successful in shielding a hospital from liability for the negligence of emergency room physicians.

We are concerned that the imposition of this nondelegable duty may cause unintended and undesirable economic ramifications, including the closure of emergency rooms. We note, however, that the same policy concerns

---

5. In the instant case, Sampson admitted that she initially went to Southeast Baptist because it was closest. She was taken to Southeast Baptist the second time by EMS. The third time she elected to go to Southwest General, where she was admitted to intensive care.

6. The prohibition of the corporate practice of medicine is the law in all states except Nebraska and Missouri. Martin C. McWilliams, Jr. & Hamilton E. Russell, III, *Hospital Liability for Torts of Independent Contractor Physicians*, 47 S.C. L. REV. at 431.

were advanced in connection with the imposition of vicarious liability, and at least one commentator has noted that the empirical evidence does not support this fear. Jim M. Perdue, *Medical Malpractice and Hospital Liability in Texas, in* STATE BAR OF TEXAS PROF. DEV. PROGRAM, 10 ADVANCED PERSONAL INJURY LAW COURSE Q, Q–65 (1994). Furthermore, we note that hospitals are in a position to protect against these losses through insurance; whereas, the patient is without similar control.

At a time when hospitals are engaged in sophisticated managed care structuring and advertising in an effort to induce patients and insurance companies to use their services, we contend that hospitals must accept the responsibility that attaches to the services it undertakes to generate revenues. While public policy and fundamental fairness indicate this result, it is dictated by the simple fact that an injured party must rely on a hospital's emergency room because there is no other place to go.

## CONCLUSION

Because we find material fact issues were raised with respect to the defense of apparent agency, we reverse the judgment of the trial court and remand the cause for trial.

DUNCAN, Justice, dissenting.

I respectfully dissent for the following reasons:

1. Section 429 of the Restatement (Second) of Agency, the "apparent agency" legal theory upon which the majority relies in reversing this summary judgment:

   a. was not pleaded or argued by either party in the trial court (either in a petition or answer or in a motion for summary judgment or response) and was not briefed or argued by either party in this court; rather, in the trial court and this court, the parties have argued whether Texas' ostensible agency law—which they have consistently used interchangeably with "apparent authority" and "agency by estoppel"—mandates or precludes the summary judgment;

   b. does not reflect Texas law, was not adopted by this court in *Baptist Memorial Hosp. Sys. v. Smith,* 822 S.W.2d 67, 72–73 (Tex.App.—San Antonio 1991, writ denied), and, as far as I have been able to determine, has not been adopted by any Texas court; and

   c. is, in fact, completely inconsistent with Texas independent contractor law, which rests upon the right to control, as reflected in the leading case of *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985).

2. Even under the apparent agency theory adopted by the majority, "the hospital must 'hold out' the physician as its employee." But Baptist has conclusively demonstrated that it did not hold out its emergency room physicians as its employees; to the contrary, short of shutting down its emergency room, it did all it could reasonably have done to notify patients that its emergency room physicians were not its employees. There simply is no evidence in this record raising a fact issue on this element of Sampson's affirmative defense, and the majority cites none. Rather, the majority reverses the summary judgment because "Sampson's affidavit raises a question of fact as to whether the signs were sufficient notice" to her and "whether [she] was in a position to understand the terms of the forms." The majority's reasons for reversing the summary judgment thus go only to Sampson's belief—reasonable or otherwise—which is irrelevant and immaterial in the absence of some holding out by Baptist.

3. Under the controlling Texas law of ostensible agency, the record conclusively establishes that Baptist did not, by any act or omission, generate a belief in Sampson that its emergency room physicians were its employees or agents; rather, it did all it reasonably could have done (short of shutting down its emergency room) to ensure that she did not hold this belief.

Under these circumstances, Baptist is entitled to summary judgment. *Compare, e.g., Lopez v. Central Plains Regional Hosp.*, 859 S.W.2d 600, 605 (Tex.App.—Amarillo 1993, no writ); *Nicholson v. Memorial Hosp. Sys.*, 722 S.W.2d 746, 750 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (plaintiff failed to raise fact issue as to some act or omission by hospital generated plaintiff's belief that physicians were hospital employees).

But as the majority's expansive dicta—its encouragement of "the full leap"—makes clear, none of these procedural and substantive obstacles to reversal are even relevant to the members of the majority. The simple reason this summary judgment has been reversed is because they believe that the hospital should be liable for its emergency room physicians' negligence as a matter of "public policy and fundamental fairness." The first half of the opinion is, therefore, just an exercise in creating a fact issue to justify a reversal.

The members of the majority apparently believe it is this court's role to unilaterally impose its views of good "public policy," and what it perceives to be "fundamental fairness," on Texas citizens. I, on the other hand, believe it is our role to apply the law enunciated by the higher courts and the legislatures to the best of our ability. Accordingly, I would leave this difficult policy decision—with its far-reaching social and economic ramifications—to the Texas Legislature. In short, I would hold that no material issues of fact are presented in this record under the controlling Texas law and affirm the summary judgment.